AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ROSWELL, NEW MEXICO

JUN 0 2 2022

MITCHELL R. ELFERS
CLERK OF COURT

| United States of America | ) |
|---|---|
| v. | ) |
| Miguel Saldana | ) Case No. 22-mJ-925 |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of June 1, 2022 in the county of Eddy in the
 District of New Mexico, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113 | Bank Robbery |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

David De Los Santos, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 2, 2022

_____
*Judge's signature*

City and state: Roswell, NM

Barbara S. Evans, US Magistrate Judge
*Printed name and title*

## Affidavit

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since August of 2006. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 and Title 21 of the United States Code. I am currently assigned as a criminal investigator for the Albuquerque Division Field Office, Roswell Resident Agency, New Mexico. Prior to my current position, I was assigned to FBI headquarters where I oversaw the preparations of intelligence products made available to all federal agencies. I remained in this position for approximately 1 ½ years. Prior to that, I was assigned to the San Antonio Division Field Office, McAllen Texas Resident Agency where I investigated narcotics investigations, public corruption, and violent crimes for nine years. Additionally, during my tenure with the FBI, I have received formal and informal training in conducting a variety of criminal investigations including but not limited to all forms of corruption. Prior to being a Special Agent of the FBI, I was police officer in Roswell, New Mexico for over twelve years serving in various positions including patrolman, detective, internal affairs investigator, patrol sergeant and patrol commander. During my tenure with the Roswell Police Department, I was trained in violent crimes to include homicide, rape, robbery and many other crimes. During the investigation of both federal and state investigations, I have executed, or participated in the execution of, numerous search and arrest warrants and seized evidence of these violations. I have utilized investigative techniques including, but not limited to, consensual monitoring, witness and subject interviews, and undercover operations.

2. The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other sworn law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause, your affiant has not included each and every fact known to me concerning this investigation. Your affiant has set forth only those facts necessary to establish that probable cause exists to support the arrest of Miguel Saldana for Bank Robbery in violation of 18 U.S.C. § 2113 (a).

## Relevant Statutes

1

3. Title 18 U.S.C. § 2113(a), provides, in relevant part, that the crime of bank robbery is committed when a person, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another money or anything of value belonging to any bank or credit union, as those terms are defined in the statue.

### Details of the Investigation

4. Affiant learned from Carlsbad Police Department (CPD), Carlsbad, New Mexico, Detective Tim Nyce on June 1, 2022, at approximately 14:44, that a robbery occurred at Western Commerce bank located at 3010 National Parks Highway in Carlsbad, New Mexico. CPD learned that $2,417.00 was taken during the robbery. The suspect was described by bank employees as a male dressed as a woman. The suspect was wearing a straw hat, a long black wig, a long black shirt, a yellow swimsuit top, grey or denim shorts, white stockings, and tennis shoes.

5. Detective Nyce made contact with bank employees at Western Commerce Bank. Detective Nyce first spoke with the teller #1 who was robbed. Teller # 1 stated that she and her co-worker first saw the person who robbed the bank in the entry way. Teller # 1 advised that the person walked right up to her teller station and had a wallet in his hand. The robber then unzipped the wallet which teller # 1 described as a white in color wallet with pink and purple flowers. Teller # 1 advised that the robber then pulled out a note that was written with a baby blue colored marker on a piece of cardboard. Teller # 1 stated that the robber did not talk or say anything. According to teller # 1, the note stated, "you already know the drill, hand me all your money." Teller # 1 advised that on the bottom of the note it had something like "God have mercy on you."

6. Teller # 1 advised that because it was taking her a while to read the note that the robber got mad and started to bang on the counter loudly. Teller # 1 then gave the robber all the money she had in her drawer and then threw her hands up and advised "that's all I have." Teller # 1 advised that the robber took all the money and the note and put it in his wallet and left the bank

7. Teller # 1 advised that the robber never displayed or pointed a weapon at her. Teller # 1 provided the robber $100's, $50's, $20's, $10's, $5's, and $1's. Teller # 1 recalled that

2

she gave the robber with mostly $10's and $20's. Teller # 1 believed that she gave the robber approximately $500 in $10's and $1,000 in $20's. Teller # 1 recalled that the money was bundled with paper clips. Teller # 1 advised that there were no other customers in the bank at the time of the robbery.

8. Teller #2, another bank employee, was also interviewed and advised that based on the robber's attire teller # 2 and teller # 1 both observed the person walking into the bank. Teller # 2 observed the robber walk up to Teller # 1's teller window and hand Teller # 1 a note. Teller # 2 advised that, after the robber departed the bank, she locked the doors and then observed the robber walking by the trailer court to the north of the bank. Teller # 2 then took a picture of the robber walking away and later provided the photo to Detective Nyce.

9. Detective Nyce learned that shoe and bike tire impressions had been located by CPD Detective Landgraf north of the bank. Detective Landgraf showed Detective Nyce where the robber had walked from the bank to the north past a couple of trailers and then walked between a small camper and larger black and white camper exiting through a chain link gate. Based on the tracks, the robber walked over to a tree that was close to the Carlsbad Ditch which is north of the Western Commerce Bank. Detective Landgraf described the shoe impressions as having a pattern that had little round circles and a triangle type pattern that was left in the dirt. Detective Landgraf also pointed out bike tire impressions that were left in the dirt near the shoe impressions. Nyce advised that he could clearly see where the robber stopped walking and got onto the bike. CPD officers located a small red container and a tube of lipstick believed to belong to the robber. Nyce later learned that the red container was men's cologne.

10. Detective Nyce learned that on June 2, 2022, at approximately 08:00, CPD Corporal John Bonnell and Officer Parker were dispatched to Walmart located at 2401 South Canal in Carlsbad, NM for an unwanted person. CPD officers then made contact with the unwanted person later identified as Miguel Saldana. CPD officers learned that on May 25, 2022, Saldana had been in Walmart and had stolen a bicycle. Saldana had ridden the same bicycle to Walmart that day. The bicycle was chained to a metal rack outside Walmart. Nyce learned that Walmart requested that Saldana be given a trespass warning

for Walmart because he had stolen the bike from there. Additionally, Walmart provided CPD officers with video surveillance of Saldana stealing the bicycle.

11. Detective Nyce advised that based on his training and experience he compared the tire tracks from the bicycle recovered at Walmart to the tire tracks located near the scene of the bank robbery and believed that the tire tracks and the tread on the bicycle tire are one in the same.

12. Detective Nyce learned that Saldana was arrested by CPD while at Walmart for an outstanding local warrant. During the search incident to arrest, in a backpack that was tied to the bike that Saldana had stolen from Walmart, CPD officers located a black wig and a straw hat. The backpack and all its contents were seized along with the reddish colored mountain bike. Saldana also had a large sum of money on his person totaling $1,858.00. Nyce later observed the money to contain denominations of $100's, $20's and $10's. A preliminary comparison of the bait money serial numbers was compared to the serial numbers of the money recovered from Saldana and no matches were located.

13. Detective Nyce advised that, once at CPD, Saldana's shoes described as a pair of tannish colored shoes were seized. Nyce advised that later a comparison of the tread pattern on Saldana's shoes matched the robbery shoe impressions that were found near the scene of robbery.

14. Detective Nyce and CPD Detective Landgraf attempted to conduct an interview with Saldana while at CPD. Saldana was read his Miranda rights, however he refused to speak to officers. Detective Nyce advised that when Saldana was stood back up to depart the interview room, a pair of black and white stripped shorts dropped out of Saldana's pant leg. Nyce recalled that, based on the photo taken by Teller #2, one of the bank tellers, the robbery suspect was wearing black shorts with a white stripe. Nyce also noted that, from the photo, the robber was wearing a pair of tannish colored shoes.

## Conclusion

15. Based on all the above information, your affiant submits there is probable cause to believe that Miguel Saldana did knowingly commit the crime of bank robbery.

16. Prosecution of Miguel Saldana was approved by Supervisory Assistant United States Attorney Richard Williams.

David De Los Santos
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me this 2nd Day of June 2022.

United States Magistrate Judge